UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LYLE G. SMITHINGELL,<br><br>       Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>       Defendant. | CASE NO. C16-5981-MAT<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Plaintiff Lyle Smithingell proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1962.[1] He has a high school degree and a carpenter's certificate, and previously worked as a carpenter. (AR 25, 39.)

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

ORDER
PAGE - 1

Plaintiff filed DIB and SSI applications in June 2013, alleging disability beginning September 20, 1996. (AR 206, 208.) Plaintiff remained insured for DIB through December 31, 2008 and was required to establish disability on or prior to that "date last insured" (DLI). *See* 20 C.F.R. §§ 404.131, 404.321. His applications were denied initially and on reconsideration.

On February 5, 2015, ALJ Cynthia Rosa held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 33-65.) At hearing, plaintiff amended his alleged onset date to December 31, 2007. (AR 37.) On May 20, 2015, the ALJ issued a decision finding plaintiff not disabled. (AR 14-27.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on September 27, 2016 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's status post three surgeries for right scapholunate ligament tear severe. She found other impairments, including major depressive disorder and anxiety disorder (not otherwise specified (NOS)), nonsevere. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found the impairments did not meet or equal the criteria of a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work and able to lift/carry five pounds occasionally and frequently with right upper extremity, but with no exertional limitations in lifting/carrying with left upper extremity; able to perform work that does not require crawling or climbing ladders, ropes, or scaffolds; can do occasional handling and fingering with right upper extremity; claimant is right hand dominant and able to perform work that does not require using hand controls with right upper extremity; and able to perform work that allows him to avoid concentrated exposure to vibrations and hazards. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a cashier II, furniture rental consultant, and information clerk.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of

ORDER
PAGE - 3

which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers the ALJ erred in failing to find a severe mental impairment and, in so doing, erred in rejecting the medical opinions of record. He requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

### Step Two

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.* A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show his medically determinable impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The ALJ concluded plaintiff's medically determinable mental impairments of major depressive disorder and anxiety disorder (NOS), considered singly or in combination, did not cause more than minimal limitations in his ability to perform basic mental work activities. (AR 17.) The ALJ pointed to a March 2011 treatment note, from primary care provider Dr. William Roes,

stating: "After a hiatus of seven years [the claimant] comes back for depression." (AR 17 (quoting 368).) The ALJ stated: "Dr. Roes noted that the claimant reported that he was feeling depressed, unmotivated, and having problems with concentration in the context of not being able to get employment." (*Id*.) She described progress notes as showing plaintiff responded well to treatment with medication (citing AR 357-490), other treatment notes showing plaintiff had not reported any psychological symptoms and generally presented with normal mood and affect (citing AR 521, 525-26), and a January 2015 treatment note from Dr. Zhiquian Wang in which plaintiff denied a history of severe depression (citing AR 565). The ALJ cited to the same treatment notes at step four, and concluded plaintiff's depression was generally well treated and that medication had worked with good success. (AR 22.)

The ALJ's decision does not reflect sufficient consideration of the medical evidence associated with plaintiff's mental impairments. The record shows Dr. Roes misstated the length of time plaintiff went without treatment for depression. While plaintiff had been previously treated for depression and other symptoms in 2002 through 2004, he also received such treatment from Dr. Roes and others in 2007 and 2008. (*See* AR 371-72, AR 376-80, 387-88).)[2] Nor is it clear Dr. Roes associated plaintiff's reports of a lack motivation, depression, and lack of concentration within the context of his inability to find employment, as opposed to considering all of those factors as pertinent to his depression: "He has not been able to get employment. He is terribly unmotivated. He feels depressed. He has problems with concentration. He has appetite issues

---

[2] Plaintiff clarifies that Dr. Roes treated him with Amitriptyline in 2011, not Zoloft, as the ALJ appeared to indicate. (*See* AR 17.) The medical records cited by the ALJ show plaintiff used Zoloft in 2002 to 2004, Effexor in 2007 and 2008, and Amitriptyline beginning in 2011. (*See* AR 367-82, 387, 406-14, 430-35.)) Plaintiff had also, in November 2002, reported a history of depression dating back to 1996. (AR 428-29 ("He notes [depression] has really been a persistent issue since 1996 with a sense of depression, decreased motivation, increased fatigue, decreased concentration, decreased memory, marked increase in anger, no tearfulness, and no suicidal ideologies. . . . [H]e would like to get on a new medication for this."))

ORDER
PAGE - 5

and has gained significant weight." (AR 368.)

The progress notes do show plaintiff responded well to treatment with medication. (*See* AR 379-80, 381-82, 406-09, 428-29, 431-33, 435 (good results, progressing well, doing quite well and much better with the use of medication); AR 371-72 (medication controlling irritability); AR 377-38 (doing much better with motivation and energy; wife noted significant improvement in irritability); and 376-77 (depression starting to control).) However, plaintiff also reported he lacked insurance or other means to obtain treatment. (AR 40, 44 (plaintiff testified at 2015 hearing that he had only recently obtained medical insurance and went without medical coverage "a whole lot of time"); AR 257 (August 2013: no insurance to see a doctor); AR 497 (September 2013: no medications because "no money or insurance").) The ALJ discounted these reports by noting plaintiff occasionally called in to Dr. Roes to receive guidance or get information, and by pointing to plaintiff's failure to pursue low or no cost conservative treatment measures suggested by a physician. (AR 22.) The low cost measures related to treatment for physical impairments and pain, not mental impairments. (*Id.* (citing AR 566).) The fact plaintiff sought guidance and information from Dr. Roes refutes the perception he did not pursue treatment and does not show he was able to obtain medication. The ALJ did not, as such, sufficiently address the evidence associated with plaintiff's failure to treat his mental impairments. *See* SSR 82-59 (failure to follow prescribed treatment may be justifiable where claimant unable to afford); SSR 96-7p (ALJ should not draw inferences from failure to seek or pursue treatment without first considering explanations for that failure, including an inability to afford treatment).

In addition, the progress and treatment notes cited by the ALJ do not persuasively support the non-severity finding. The ALJ cites to multiple notes from a single May 2014 procedure on plaintiff's wrist as showing his failure to report psychological symptoms and presentation with

ORDER
PAGE - 6

normal mood and affect. (*See* AR 521, 524, 526.) The January 2015 treatment note similarly relates to plaintiff's physical impairments. (*See* AR 564-66.)

The ALJ also, in considering mental impairments, found plaintiff had no more than mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. (AR 17-18.)[3] She construed functional reports completed by plaintiff and his wife to show his activities of daily living are primarily compromised by physical pain and not mental impairments, and pointed to another report that plaintiff goes grocery shopping when his wife wants him to go and does light cleaning "'here and there'", but "does not do much because, 'I don't know, most of the time, I don't even think about it.'" (AR 18 (citing AR 250-60, 268-77, 500).) The ALJ noted plaintiff's report he spends time with family on a daily basis, but does not go anywhere on a daily basis, and contrasted reports about his social functioning with medical records reflecting his presentation as pleasant and cooperative. (AR 18 (citing AR 254-55, 272-73 and AR 492, 521, 526, 563).) The ALJ stated plaintiff generally attributed problems with concentration, persistence, and pace to his pain symptoms and not necessarily his mental impairments. Plaintiff also reported he was able to watch television without difficulty, read news online, and "'find his way around' the computer" and, in a mental status examination (MSE), successfully completed serial sevens, followed a three-step command with mild hesitation, and spelled "world" backward with one mistake. (AR 18 (citing AR 500-01).)

It is not clear plaintiff's wife attributed his difficulties primarily to physical impairments.

---

[3] Upon identification of a colorable claim of mental impairment, an ALJ must apply a "special technique[.]" 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *Keyser v. Comm'r, Soc. Sec. Admin.*, 648 F.3d 721, 725-26 (9th Cir. 2011). Specifically, an ALJ's decision must include a specific finding as to the degree of mental limitation in each of four broad functional areas, including: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), (e); 416.920a(c), (e). *But see* 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00 (A)(2)(b) (modifications to criteria effective January 2017).

ORDER
PAGE - 7

She stated plaintiff "mentally . . . crashed" after his injury, is "always angry, depressed and paranoid", and is "in constant pain and has trouble sleeping concentrating and completing tasks . . . tires easily and isn't interested in anything." (AR 257.) She stated plaintiff suffers from depression and paranoia, thinks everyone is against him, and is always angry, offensive and rude; cannot get along with others due to anger and paranoia; no longer gets enjoyment from anything; that his constant pain makes him angry, tired, miserable; and is "mentally unstable." (AR 273-75.) The ALJ also failed to describe a number of notable aspects of plaintiff's presentation on MSE. (AR 499-500 (plaintiff on verge of tears throughout interview, polite, but angry and irritable, blunted prosody, perseverative thought processes, limited recall for exact dates and details, somewhat distractible and requiring repetition of words and questions, affect irritable, angry, resentful, and dysphoric, and could not remember any of three objects after five minutes).) (*See also* AR 492 (describing plaintiff as cooperative, but also somewhat agitated and his wife as claiming "he does have anger management issues at times").)

The Court, in sum, concludes the ALJ erred in considering the severity of plaintiff's mental impairments. These errors undermine the substantial evidence support for the ALJ's conclusions at step two and beyond.

Medical Opinions

An ALJ, as a general matter, gives more weight to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be

ORDER
PAGE - 8

rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Non-examining State agency medical and psychological consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2), 404.1513a, 416.913a; SSR 96-6p.

In September 2013, consultative psychiatric examiner Dr. Mary Lemberg opined plaintiff could manage his funds; had the ability to perform simple and repetitive tasks, but would have more difficulty completing detailed and complex tasks, mostly due to short-term memory difficulties, and would have occasional difficulty adapting to new environments; may have difficulty attending to instructions from supervisors and would have some difficulty interacting with co-workers and the public; his depression and prominent irritability and anger would limit productivity (due to low motivation) and interpersonal interactions; and would have moderate to severe difficulty dealing with the usual stress encountered in a work environment and may have greater difficulty with authority figures. (AR 501-02.) Dr. Lemberg observed that, while plaintiff's depression had been partially treatable with medical management in the past, plaintiff had no medical coverage or funds to cover treatment. (AR 501.) Without treatment, his condition was not likely to improve and may be progressively difficult to treat. With treatment, his mood could partially improve. Dr. Lemberg assessed a Global Assessment of Functioning (GAF) score of 50. (AR 501.) *See* Diagnostic and Statistical Manual of Mental Disorders (DSM) 34 (4th ed. 2000) (DSM-IV-TR) (GAF of 41 to 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning").[4]

---

[4] The most recent version of the DSM 16-17 (5th ed. 2013) (DSM-V) does not include a GAF rating for assessment of mental disorders. While the Social Security Administration continues to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the

The ALJ assigned some weight to the observations and opinions of Dr. Lemberg. (AR 24.) She described plaintiff's success in a number of different portions of the MSE and stated:

> [Dr. Lemberg] noted that the claimant presented as frustrated with financial stressors and the disability process. He endorsed anxiety about "everything", such as lack of medical coverage, lack of money, and frustration at the lack of medical treatment (despite it being discussed in his medical record). On the [MSE], the claimant presented as being on the verge of tears and described anger and frustration toward Social Security and Labor and Industries. Dr. Lemberg noted that the claimant grew more angry and irritable as the interview progressed, but that this appeared to be more directed at the above-named entities and not toward her. She found that his attention was somewhat distractible and he was perseverative regarding the government, his disability, and the limited care he has received.

(AR 24-25.) The ALJ found these observations and the diagnoses consistent with the record as a whole and with plaintiff's demonstrated functioning. (AR 25.)

The ALJ found Dr. Lemberg's opinion that plaintiff would have difficulty with detailed and complex tasks due to his memory and some occasional difficulty adapting to new environments inconsistent with the record as a whole. (*Id.*) She found his reports of pervasive anger and frustration not borne out by treatment notes from other clinicians, who noted polite and/or cooperative presentation, and inconsistent with plaintiff's self-reports of no psychological issues or severe depression. The ALJ gave these portions of the opinion little weight. She found the GAF score inconsistent with the record as a whole and with plaintiff's demonstrated functioning, and gave it no weight.

Non-examining State agency physicians Drs. John Gilbert and Jan Lewis, in October 2013 and January 2014 respectively, found plaintiff's mental impairments severe. (AR 72-74, 103-04.) While assessing mild limitations in activities of daily living and no episodes of decompensation,

---

applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066").

ORDER
PAGE - 10

Drs. Gilbert and Lewis assessed moderate limitations in the ability to maintain concentration, persistence, and pace and in social functioning. (*Id*. and AR 77-79, 108-09.) They opined plaintiff could perform simple, repetitive tasks and more complicated tasks to which he was accustomed, but was not capable of complex problem solving, and that his interaction with the general public should be limited to brief and superficial and he should not work in situations where his success depends upon political skills with interactions with coworkers and supervisors, but he was capable of getting along sufficiently to accomplish simple repetitive work tasks. (AR 72-74, 77-79, 103-04, 108-09.)

The ALJ gave little weight to the opinions of Drs. Gilbert and Lewis. (AR 25.) She referenced her earlier finding of no more than mild functional restrictions, and found the "evidence received at the hearing level shows the claimant's depression is not as severe as alleged." (*Id.*)

The Court finds the ALJ's consideration of the medical opinion evidence insufficient. While the Commissioner describes the opinions of Dr. Lemberg as contradicted, several of her opinions are consistent with those of the State agency physicians. At the least, all of the physicians' opinions support a finding of severe mental impairments at step two and some degree of limitation in relation to task complexity and working with the public. The ALJ did not explain why the record as a whole was inconsistent with Dr. Lemberg's opinions on detailed and complex tasks and occasional difficulty with adaptation or, with the opinions of Drs. Gilbert and Lewis, what hearing level evidence shows plaintiff's depression was not as severe as alleged. "As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. However, a review of the ALJ's decision does not allow for an inference as to the evidence relied upon. The ALJ, as such, also erred in considering the medical opinions addressing plaintiff's mental impairments.

Harmful Error

Plaintiff avers harmful error in the failure to include the limitations opined by Drs. Gilbert, Lewis, and Lemberg in the RFC and corresponding hypothetical to the VE. For example, while Drs. Gilbert and Lewis opined he should have no more than superficial contact with the public and Dr. Lemberg opined he would have some difficulty interacting with the public, the VE testified all three jobs identified by the ALJ at step five involve working with the public. (AR 61.) Plaintiff also contrasts Dr. Lemberg's opinions of limitations in interpersonal interactions, productivity, and usual workplace stress, with the VE's testimony no more than one absence a month would be tolerated. (AR 62.) The Commissioner does not directly respond to these arguments.

This matter should be remanded for further administrative proceedings. The ALJ erred in assessing the medical evidence and opinions associated with plaintiff's mental impairments, and did not include any restrictions associated with plaintiff's mental functioning in the RFC. Because it cannot be said that the ALJ's errors were inconsequential to the ultimate nondisability determination, they may not be deemed harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The ALJ should, on remand, reconsider the medical evidence associated with plaintiff's mental functioning beginning at step two.

**CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this 6th day of June, 2017.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 12